IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. GARDNER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
STEVEN G. GARDNER, APPELLANT.

Filed April 1, 2014.   No. A-12-909.

Appeal from the District Court for Douglas County: JOSEPH S. TROIA, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Joseph Kuehl, of Lefler & Kuehl Law Office, for appellant.

Jon Bruning, Attorney General, and Carrie A. Thober for appellee.

IRWIN, PIRTLE, and BISHOP, Judges.

IRWIN, Judge.

## I. INTRODUCTION

This is a postconviction appeal. In 2009, Steven G. Gardner was convicted by a jury of robbery, attempted robbery, and two counts of use of a deadly weapon to commit a felony. As a result of his convictions, he was sentenced to a total of 10 to 14 years' imprisonment. On direct appeal, this court summarily affirmed Gardner's convictions and sentences.

Gardner now appeals the district court's dismissal of all of his claims for postconviction relief without an evidentiary hearing. For the reasons set forth below, we reverse the district court's decision to deny Gardner an evidentiary hearing with regard to his allegation concerning certain alibi testimony that could have been presented at trial. We affirm the district court's decision to deny Gardner an evidentiary hearing for all of the remaining allegations.

## II. BACKGROUND

In May 2009, Gardner was charged by amended information with robbery, attempted robbery, and two counts of use of a deadly weapon to commit a felony. The charges stem from

an incident that occurred in September 2007, where two young women, Lindsay Wilson (Lindsay) and Karla Dixon (Karla), reported that they were robbed at gunpoint while sitting in Lindsay's car outside of her home. Evidence presented at the jury trial revealed that Lindsay immediately identified Gardner as the person who robbed her and Karla. Lindsay knew Gardner because he lived "down the street" from her and would on occasion "bum[] a cigarette from [her]" when she was outside smoking. In fact, Lindsay testified that before Gardner approached her car that night, he identified himself to her as "Steve."

Karla testified that she did not know Gardner prior to the incident in September 2007. However, she identified Gardner at trial as the man who robbed her and her friend, Lindsay.

Gardner did not present any evidence in his defense.

At the conclusion of the trial, the jury found Gardner guilty of all four of the charges alleged in the amended information. He was sentenced to a total of 10 to 14 years' imprisonment. Gardner appealed from his convictions and sentences. By the time of his appeal, Gardner had different counsel than his trial attorney.

On direct appeal, Gardner alleged that there was insufficient evidence to support his convictions and that his sentences were excessive. This court summarily affirmed Gardner's convictions and sentences on June 21, 2010, in case No. A-10-088.

In September 2010, Gardner filed a pro se motion for postconviction relief. He was appointed counsel, and an amended motion for postconviction relief was filed. The amended motion alleged that Gardner's trial counsel and his appellate counsel were ineffective in numerous respects. Specifically, the motion alleged that trial counsel was ineffective in failing to adequately prepare for trial; failing to pursue Gardner's alibi defense; failing to adequately attempt to discredit the testimony of the two victims; failing to suppress and/or discredit the identification procedure used by police; failing to adequately attempt to discredit Karla's testimony with the use of social media; and failing to take the deposition of Lindsay's boyfriend, who was on the telephone with Lindsay during the robbery. In addition to these allegations, the amended motion alleged that Gardner's appellate counsel was ineffective for failing to raise any of these issues on direct appeal.

The district court denied Gardner's motion without an evidentiary hearing. In its order, the court stated, "[Gardner] has failed to state claims with specificity that show that either trial counsel or appellate counsel were ineffective."

Gardner appeals.

### III. ASSIGNMENTS OF ERROR

On appeal, Gardner alleges, restated and consolidated, that the district court erred in denying his motion for postconviction relief without an evidentiary hearing.

### IV. STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Branch*, 286 Neb. 83, 834 N.W.2d 604 (2013).

A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. *State v. Dunkin*, 283 Neb. 30, 807 N.W.2d 744 (2012). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id*. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Golka*, 281 Neb. 360, 796 N.W.2d 198 (2011).

## V. ANALYSIS

Gardner appeals the district court's decision to deny his motion for postconviction relief without an evidentiary hearing. An evidentiary hearing on a motion for postconviction relief is required on an appropriate motion containing factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution, causing the judgment against the defendant to be void or voidable. *State v. Branch, supra*. An evidentiary hearing is not required when the motion alleges only conclusions of fact or law. *Id*. If the defendant makes sufficient allegations of a constitutional violation which would render the judgment void or voidable, an evidentiary hearing may be denied only when the records and files affirmatively show that the defendant is entitled to no relief. *Id*.

In his brief on appeal, Gardner has narrowed his postconviction claims to four allegations of ineffective assistance of trial counsel and four allegations of ineffective assistance of appellate counsel. Specifically, he alleges that trial counsel was ineffective in failing to move to suppress the victims' out-of-court identification; failing to call Gardner's mother as an alibi witness; failing to depose Lindsay's boyfriend, who was on the telephone with her at the time of the robbery; and deposing Lindsay and Karla too close in time to trial. He also alleges that his appellate counsel was ineffective in failing to raise each of these instances of ineffective assistance of trial counsel on direct appeal.

### 1. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Gardner's allegations that he received ineffective assistance of trial counsel are procedurally barred. A motion for postconviction relief cannot be used to secure review of issues that were known to the defendant and could have been litigated on direct appeal. *State v. Hessler*, 282 Neb. 935, 807 N.W.2d 504 (2011). Gardner was represented by different counsel than his trial attorney on his direct appeal. As such, he could have, and should have, raised his allegations of ineffective assistance of trial counsel at the time of his direct appeal. Because he did not raise these allegations at that time, he is now procedurally barred from raising these issues in his postconviction motion. Accordingly, the district court did not err in denying Gardner an evidentiary hearing as to his allegations of ineffective assistance of trial counsel.

### 2. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

When analyzing a claim of ineffective assistance of appellate counsel, courts usually begin by determining whether appellate counsel failed to bring a claim on appeal that actually prejudiced the defendant. *State v. Timmens*, 282 Neb. 787, 805 N.W.2d 704 (2011). Appellate

counsel's failure to raise an issue on appeal could be ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *Id*. When, as here, the case presents layered ineffectiveness claims, we determine the prejudice prong of appellate counsel's performance by focusing on whether trial counsel was ineffective under the test in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *State v. Davlin*, 277 Neb. 972, 766 N.W.2d 370 (2009).

Under the *Strickland* test, the defendant has the burden to show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defendant. *State v. McGhee*, 280 Neb. 558, 787 N.W.2d 700 (2010). The two prongs of the ineffective assistance of counsel test, deficient performance and prejudice, may be addressed in either order. *State v. Sidzyik*, 281 Neb. 305, 795 N.W.2d 281 (2011). To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. McGhee, supra*.

We now turn to Gardner's specific allegations of ineffective assistance of appellate counsel.

### (a) Out-of-Court Identification

Gardner alleges that his trial counsel was ineffective for failing to file a motion to suppress Karla's out-of-court identification of Gardner as the man who robbed her and that his appellate counsel was ineffective for failing to raise this issue on direct appeal. In addition, he alleges that trial counsel was ineffective when questioning Lindsay during cross-examination about the out-of-court identification of Gardner and that his appellate counsel was ineffective for failing to raise this issue on direct appeal. We will address each of Gardner's assertions about the out-of-court identification separately.

### *(i) Karla's Out-of-Court Identification*

Gardner alleges that trial counsel should have filed a motion to suppress Karla's out-of-court identification of Gardner as the man who robbed her because such identification was "tainted" and "influenced" by Lindsay's out-of-court identification of Gardner. Brief for appellant at 7. Specifically, Gardner alleges that the evidence revealed that Karla was in the same room with Lindsay when Lindsay identified a photograph of Gardner as her neighbor and as the person who robbed the two of them. Gardner asserts that it is clear that Karla did not previously know Gardner and that, as such, her out-of-court identification of Gardner was based on Lindsay's out-of-court identification.

Gardner's assertion is without merit. There is no indication in the record that Karla ever made an out-of-court identification of Gardner. Although she was apparently in the same room with Lindsay when Lindsay identified a photograph shown to her as Gardner, there is no evidence that Karla was asked anything by police or offered anything to police about the photograph. As such, even if Gardner's trial counsel had filed a motion to suppress Karla's out-of-court identification, such motion would not have been successful.

In addition, we note that at trial, Karla did identify Gardner as the man who robbed her. However, she clearly indicated that her in-court identification was based on her observations of Gardner during the robbery. Karla testified that during the robbery, she was less than 5 feet away

from Gardner, and that she looked at his face the entire time he was robbing her. She was able to describe what Gardner looked like that night and how his appearance back then was different than his appearance in court at the time of the trial. In addition, she testified that she was "absolutely sure that [Gardner was] the one that robbed" her and Lindsay.

An in-court identification may properly be received in evidence when it is independent of and untainted by illegal pretrial identification procedures. *State v. Smith*, 269 Neb. 773, 696 N.W.2d 871 (2005); *State v. Sanders*, 15 Neb. App. 554, 733 N.W.2d 197 (2007). A primary factor in determining whether an independent basis for an in-court identification exists is the opportunity afforded the witness to observe the defendant in circumstances free from taint. *State v. Smith, supra*; *State v. Sanders, supra*.

We conclude that Gardner's assertions concerning trial counsel's failure to file a motion to suppress Karla's out-of-court identification of Gardner and appellate counsel's failure to raise this issue on direct appeal are without merit. The record does not provide any indication that Karla ever made an out-of-court identification of Gardner. And, there is sufficient evidence to demonstrate that Karla's in-court identification of Gardner was based on her memories from the night of the robbery and not from a photograph she saw at the police station. The district court did not err in denying Gardner an evidentiary hearing on this issue.

*(ii) Cross-Examination of Lindsay*

Gardner alleges that trial counsel was ineffective in his cross-examination of Lindsay about her out-of-court identification of Gardner. Specifically, Gardner alleges that there was no valid reason for counsel to question Lindsay about her out-of-court identification of Gardner and that, in fact, such is "the type of testimony that trial counsel . . . would want to avoid" because it demonstrated that the victims were consistent in their identifications of Gardner. Brief for appellant at 8.

Gardner's assertion has no merit. It is clear from our reading of counsel's cross-examination of Lindsay that counsel was attempting to demonstrate to the jury that Karla's identification of Gardner may have been tainted by Lindsay's identification. Counsel asked Lindsay if she and Karla were in the room together when police showed Lindsay the photograph. In addition, counsel appeared to be pointing out to the jury that police showed the victims only one photograph: the photograph of Gardner. It is clear that counsel's rationale for this entire line of questioning was to demonstrate the problems with the out-of-court identification of Gardner. Thus, Gardner cannot show that counsel's performance in this regard was deficient. Because Gardner's trial counsel's performance was not deficient, Gardner's appellate counsel was not ineffective in failing to raise this issue on appeal. We affirm the decision of the district court to deny Gardner an evidentiary hearing on this issue.

(b) Alibi Testimony

Gardner alleges that his trial counsel was ineffective for failing to present alibi evidence in the form of his mother's testimony and that his appellate counsel was ineffective for failing to raise this issue on direct appeal. Specifically, Gardner alleges his mother would have testified that, on the night of the robbery, she was at the home she shared with Gardner and that, although she was asleep when the robbery allegedly took place, she is "a light sleeper [and] was sleeping

near the exit that [Gardner] would have had to use" to leave the residence. Brief for appellant at 9. She also would have testified that "she never heard any[one]," including Gardner, leave the house that night. *Id*. Gardner alleged in his brief that his trial counsel was aware of this potential alibi defense. In fact, it is clear from the record that prior to trial, counsel filed a notice of alibi with the district court, indicating his intent to offer evidence establishing an alibi for Gardner.

Based on our reading of Gardner's assertions regarding his potential alibi defense, it seems clear that had Gardner's mother been called to testify, she would have told the jury that Gardner could not have committed the robbery because he was at home with her. It also appears that Gardner's trial counsel was aware of this testimony, but chose not to present it. Instead, counsel rested without presenting any evidence in Gardner's defense. What is not clear is why counsel chose not to present this testimony.

We do note that at trial, the State presented evidence which indicated that the police went to Gardner's home a short time after the robbery and "pounded on the front door, pounded on the back door[,]" but no one answered. This evidence might suggest that neither Gardner nor his mother were at home at the time of the robbery, contrary to the potential alibi testimony. However, if Gardner's mother had been called to testify, she may have, in fact, explained why she did not answer the door when the police arrived. And, even if there was no explanation offered, it would have been for the jury to decide on the credibility of the alibi testimony. See *State v. Brown*, 213 Neb. 68, 70, 327 N.W.2d 107, 108 (1982) ("jurors are the judges of the credibility of the witnesses and the weight to be given to the testimony, and they have the right to credit or reject the whole or any part of the testimony in the exercise of their judgment").

Because there is no explanation for trial counsel's failure to present the alibi testimony of Gardner's mother and because such testimony would have provided some evidence that Gardner did not commit the robbery in question, we conclude that Gardner's assertions regarding his appellate counsel's failure to raise this issue on direct appeal are sufficient to warrant the granting of an evidentiary hearing. We reverse the district court's decision to deny the evidentiary hearing as to this issue.

(c) Failure to Depose Lindsay's Boyfriend

Gardner next alleges that his trial counsel was ineffective for failing to take the deposition of Lindsay's boyfriend and that his appellate counsel was ineffective for failing to raise this issue on direct appeal. Specifically, Gardner alleges that Lindsay was on the telephone with her boyfriend at the time of the robbery and that, as such, he is one of "four people with knowledge of what happened that evening." Brief for appellant at 10. Gardner goes on to allege, "There is no doubt that this witnesses [sic] information would have been critical, given the fact that he was on the phone while it was occurring and there was no other physical or corroborating evidence offered by the State to convict [Gardner]." *Id*.

Gardner's assertion amounts to mere conclusions. He does not allege what Lindsay's boyfriend would have testified to at the deposition, nor does he allege how any such testimony would have been beneficial to his defense or relevant to the case. In addition, he does not even allege that Lindsay's boyfriend was available to testify at a deposition. In fact, Gardner's assertion regarding his trial counsel's failure to depose Lindsay's boyfriend is really an assertion

about the victims' credibility, which issue was thoroughly examined by Gardner's counsel at trial and raised on direct appeal.

Gardner did not meet his burden of alleging sufficient facts regarding trial counsel's failure to depose Lindsay's boyfriend and any resulting prejudice to him. Essentially, Gardner's assertion, as stated in his brief on appeal, is insufficient to demonstrate either that his trial counsel's performance was deficient or that he was prejudiced by his counsel's actions. Because Gardner did not demonstrate that his trial counsel was ineffective in failing to depose the boyfriend, he also cannot demonstrate that his appellate counsel was ineffective in failing to raise this issue on direct appeal. The district court did not err in denying Gardner an evidentiary hearing as to this issue.

### (d) Deposing Lindsay and Karla Too Close to Trial

Finally, Gardner alleges that his trial counsel was ineffective for deposing Lindsay and Karla only 3 days before trial and that his appellate counsel was ineffective for failing to raise this issue on direct appeal. Specifically, Gardner alleges that because the victims were deposed so close in time to the trial, "[t]rial counsel was stuck with whatever answers the victims supplied during the deposition." Brief for appellant at 11. And, further, "There was no time to explore the veracity or do any outside investigations as to any of their statements with trial looming just 3 days away." *Id.*

Again, Gardner's assertion amounts to mere conclusions. He does not allege what, if anything, either of the victims testified to during their depositions that required any further investigation. He also does not allege what actions trial counsel should have taken after the depositions that there was no time to complete because of the proximity of the depositions to trial. Essentially, Gardner does not allege how the result of the trial would have been any different had the victims' depositions been completed at an earlier time.

Accordingly, Gardner's assertion, as stated in his brief on appeal, is insufficient to demonstrate either that his trial counsel's performance was deficient or that he was prejudiced by his counsel's actions. Because Gardner did not demonstrate that his trial counsel was ineffective by deposing the victims 3 days before trial, he also cannot demonstrate that his appellate counsel was ineffective in failing to raise this issue on direct appeal. The district court did not err in denying Gardner an evidentiary hearing as to this issue.

### VI. CONCLUSION

We reverse the district court's denial of Gardner's request for an evidentiary hearing regarding appellate counsel's alleged ineffectiveness in failing to raise on direct appeal the issue of trial counsel's decision not to present Gardner's alibi testimony. We otherwise affirm the district court's decision to deny Gardner an evidentiary hearing on the issues raised in his motion for postconviction relief. The judgment of the district court is affirmed in part and in part reversed, and the cause is remanded for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.