STATE OF NEBRASKA, APPELLEE, V.
ANTHONY J. SMITH, APPELLANT.
696 N.W.2d 871

Filed May 13, 2005. No. S-03-1225.

Jeffrey M. Wightman, of Wightman & Wightman, for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## I. NATURE OF CASE

Anthony J. Smith, the appellant, filed a motion for postconviction relief after his conviction and sentence for robbery were affirmed on appeal. Smith sought postconviction relief based on a defect in the information charging him with robbery and also based on the alleged ineffectiveness of his counsel. The motion was overruled, and Smith appealed. Smith's appeal was later dismissed as untimely, and he filed a second "motion for postconviction relief," asserting that he had provided the necessary documents to perfect an appeal from the first postconviction motion within the statutory time period but that a clerk's error had delayed the appeal. The district court sustained the second "postconviction motion" and "reestablished" the original order denying Smith's first motion for postconviction relief, allowing Smith to appeal from that order. Smith then filed this appeal, assigning that the district court erred in denying his first motion for postconviction relief.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In March 1999, an information was filed, charging Smith with robbery, use of a weapon to commit a felony, and possession of a firearm by a felon or fugitive from justice. Smith moved to suppress evidence related to a pretrial identification procedure conducted by law enforcement officers. The court overruled the motion, finding that although the photographic array used by the officers was unduly suggestive, the totality of the circumstances showed no irreparable harm to Smith with respect to the victim's subsequent identification of Smith.

Smith was found guilty of robbery and sentenced to 10 to 20 years' imprisonment. Smith appealed the conviction, assigning that the district court erred in finding sufficient evidence to sustain a conviction and in failing to suppress the pretrial identification evidence. The Nebraska Court of Appeals affirmed the judgment of the district court. See *State v. Smith*, No. A-99-1107,

2000 WL 1285496 (Neb. App. Sept. 12, 2000) (not designated for permanent publication).

In July 2001, Smith filed a motion for postconviction relief. Smith alleged that the information filed in March 1999 was defective because it failed to include an essential element of the crime charged—that is, it failed to specify against whom the robbery was alleged to have been committed. Smith also alleged that, but for the ineffective assistance of his counsel, the outcome of his direct appeal would have been different. On August 9, the district court overruled the motion for postconviction relief, finding no denial of or infringement upon Smith's federal or state constitutional rights which would render the judgment void or voidable.

Smith filed a notice of appeal on September 10, 2001, but was instructed that the appeal could not be docketed without a petition to proceed in forma pauperis and a poverty affidavit. Thereafter, Smith filed the notice of appeal and accompanying documents on September 28. The Court of Appeals dismissed the appeal as untimely. *State v. Smith*, 10 Neb. App. lv (No. A-01-1087, Nov. 7, 2001).

Smith filed a second "motion for postconviction relief" on October 3, 2002. Smith asserted that he had included the affidavit of poverty and other necessary documents with the notice of appeal filed with the clerk on September 10, 2001, but that the clerk had misplaced the documents, depriving him of his right to appeal. Smith asked the district court to permit him to appeal the August 9 order and to appoint counsel to represent him in the matter. The district court appointed counsel to represent Smith and, on October 6, 2003, sustained Smith's second "motion for postconviction relief," finding that an affidavit of poverty was included with the notice of appeal filed on September 10 and ordering the August 9 judgment to be "reestablished" in order to permit Smith to appeal the decision to the Court of Appeals.

Accordingly, Smith filed this appeal, challenging the August 9, 2001, order denying his first motion for postconviction relief.

### III. ASSIGNMENTS OF ERROR

Smith assigns that the district court erred in failing to find that his constitutional rights were infringed upon as a result of his attorney's failure to object (1) at trial to pretrial identification evidence

and in-court identification, (2) to the defective information, and (3) to questioning with respect to Smith's prior convictions.

## IV. STANDARD OF REVIEW

■ Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Benzel, ante* p. 1, 689 N.W.2d 852 (2004).

## V. ANALYSIS

### 1. JURISDICTION

■ Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Weeder v. Central Comm. College, ante* p. 114, 691 N.W.2d 508 (2005). In this case, the State argues that Smith's appeal should be dismissed for lack of jurisdiction because Smith did not timely appeal the order of August 9, 2001.

■ In order to initiate an appeal, a notice of appeal must be filed within 30 days after entry of the judgment, decree, or final order. See Neb. Rev. Stat. § 25-1912 (Cum. Supp. 2004). An in forma pauperis appeal is perfected when the appellant timely files a notice of appeal and an affidavit of poverty. *State v. Jones,* 264 Neb. 671, 650 N.W.2d 798 (2002). The State asserts that Smith failed to file a poverty affidavit with his notice of appeal within 30 days of the August 9, 2001, order, noting that the notice and accompanying paperwork were not all filed until September 28.

However, in its October 6, 2003, order sustaining Smith's second "motion for postconviction relief," the district court found that a poverty affidavit was indeed included with the notice of appeal filed by the clerk on September 10, 2001. Consequently, the court ordered that the judgment entered on August 9, denying Smith's first motion for postconviction relief, be "reestablished" to allow Smith to take a proper appeal from the order.

The State asserts that there is no evidence to support the district court's order. However, the State did not appeal the October 6, 2003, decision of the district court. Therefore, unless the court did not have subject matter jurisdiction to order the relief contained in the October 6 decision, the only issues properly before this court are those presented by the August 9, 2001, order, denying Smith's first motion for postconviction relief.

█ A judgment entered by a court which lacks subject matter jurisdiction is void. It is the longstanding rule in Nebraska that such a void judgment may be attacked at any time in any proceeding. *Kuhlmann v. City of Omaha*, 251 Neb. 176, 556 N.W.2d 15 (1996). Jurisdiction of the subject matter means the authority to hear and determine both the class of actions to which the action before the court belongs and the particular question which it assumes to decide. *In re Interest of Jeremy T.*, 257 Neb. 736, 600 N.W.2d 747 (1999).

█ When a judgment is attacked in a manner other than by a proceeding in the original action to have it vacated, reversed, or modified, or by a proceeding in equity to prevent its enforcement, the attack is a collateral attack. *In re Applications T-851 & T-852*, 268 Neb. 620, 686 N.W.2d 360 (2004). Collateral attacks on previous proceedings are impermissible unless the attack is grounded upon the court's lack of jurisdiction over the parties or subject matter. *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997). In this case, we must determine whether the district court had the subject matter jurisdiction to hear Smith's second "motion for postconviction relief" and to "reestablish" the August 9, 2001, order to allow Smith to file a proper appeal.

█ This court has held that where a duty is placed upon a public officer to perform acts necessary to perfect an appeal, his or her failure to perform cannot be charged to the litigant or operate to defeat the appeal. *Purdy v. City of York*, 243 Neb. 593, 500 N.W.2d 841 (1993); *Harte v. Gallagher*, 186 Neb. 141, 181 N.W.2d 251 (1970). However, if the negligence of the appellant or his or her agent concurs with that of the court official, it precludes the appeal. See, *Larson v. Wegner*, 120 Neb. 449, 233 N.W. 253 (1930); *Continental Building & Loan Association v. Mills*, 44 Neb. 136, 62 N.W. 478 (1895). Consequently, if Smith's first

postconviction appeal was lost solely due to the clerk's error, Smith would be entitled to seek reinstatement of that appeal.

In addition, we have indicated that in a civil proceeding, the appropriate procedure for the appellant to use in such cases is a motion to reinstate the appeal, filed with the same court in which the case was adjudicated. See *R. V. R. R. Co. v. McPherson*, 12 Neb. 480, 11 N.W. 739 (1882). A postconviction proceeding is civil in nature. *State v. Lotter*, 266 Neb. 245, 664 N.W.2d 892 (2003). In *McPherson, supra*, the appellant instead filed a new petition in the district court, claiming the dismissal of her appeal was error; however, on appeal, this court considered it as a motion and found no error in the district court's decision to sustain the motion and reinstate the appeal. Cf. *State v. McCracken*, 260 Neb. 234, 615 N.W.2d 902 (2000) (district court may properly reinstate direct appeal as postconviction relief), *abrogated on other grounds, State v. Thomas*, 262 Neb. 985, 637 N.W.2d 632 (2002). Therefore, the appropriate procedure for securing a new appeal when an appeal is lost due to official negligence is to file a motion in the lower court and establish the factual basis for obtaining relief. In short, the district court in this case had the power to reinstate a civil appeal upon the motion of a litigant.

Thus, the district court had the power to reinstate Smith's appeal upon a finding that his appeal was dismissed as untimely as a result of an error on the part of the court clerk. The court made such a finding in its order on October 6, 2003:

> It is clear from the record that [Smith] adamantly believes that there was an affidavit of poverty attached to the notice of appeal, which was filed on September 10, 2001. The notice of appeal includes a statement that the poverty affidavit is attached. The Clerk of the District Court of Dawson County, Nebraska, is less than adamant about the receipt of the poverty affidavit and is not clear about the telephone conversation between herself and [Smith]. It is clear that [Smith] mailed the documents for the appeal. The preponderance of the evidence indicates that included in those documents was an affidavit of poverty.

Based on that finding, the court sustained Smith's second "motion for postconviction relief" and "reestablished" the judgment

entered on August 9, 2001, allowing Smith to take a proper appeal therefrom. The district court had jurisdiction over the subject matter and the power to grant a reinstatement of the prior appeal; therefore, the State cannot attack that order in this appeal.

The State did not perfect a timely appeal from the October 6, 2003, order, nor can that order be collaterally attacked in the present appeal. If the State believed the evidence was insufficient to support the order, or that a postconviction motion was an inappropriate vehicle for such relief, the State should have presented a timely appeal. Error, if any, committed by the trial court would have been an error in the exercise of jurisdiction, but it was not outside the subject matter jurisdiction of the court. See *In re Interest of Jeremy T.*, 257 Neb. 736, 600 N.W.2d 747 (1999). Because the court had subject matter jurisdiction, the order granting a new appeal was not void ab initio. The State waived challenges to the court's finding that a poverty affidavit was included with the notice of appeal filed by the clerk on September 10, 2001, and to questions with respect to the court's exercise of jurisdiction, by failing to appeal the October 6, 2003, order.

The only order before us is that of August 9, 2001, denying Smith's first motion for postconviction relief. As a result, it is not proper for us to here determine whether the district court's decision "reestablishing" the August 9 order was an appropriate exercise of jurisdiction or whether a second "motion for postconviction relief" was the correct method for Smith to challenge the Court of Appeals' dismissal of his initial appeal from the August 9 order.

## 2. POSTCONVICTION RELIEF

Smith argues that the district court erred in failing to grant him postconviction relief based on the ineffectiveness of his counsel in failing to object to evidence of the pretrial identification offered at trial, to the allegedly defective information filed against him, and to improper questioning related to his prior convictions.

Neb. Rev. Stat. § 29-3001 (Reissue 1995) provides a postconviction action when a prisoner is claiming a right to be released because there was a denial or infringement of the rights of the prisoner, rendering the judgment void or voidable under the Constitution of this state or the Constitution of the United States. *State v. Hunt*, 262 Neb. 648, 634 N.W.2d 475 (2001).

In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden first to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *State v. Perry*, 268 Neb. 179, 681 N.W.2d 729 (2004). To prove prejudice, the defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *State v. Hubbard*, 267 Neb. 316, 673 N.W.2d 567 (2004). Where a defendant is unable to demonstrate sufficient prejudice, no examination of whether counsel's performance was deficient is necessary. *State v. McCracken*, 260 Neb. 234, 615 N.W.2d 902 (2000).

### (a) Pretrial and In-Court Identifications

Smith first argues that his counsel was deficient in failing to object to testimony at the original bench trial related to the pretrial identification procedures conducted by law enforcement officers and to the victim's in-court identification of Smith.

Smith moved to suppress evidence of the pretrial identification procedures conducted by law enforcement officers. During the hearing on Smith's suppression motion, Kenneth J. Schumacher, an investigator with the Lexington Police Department, testified about his role in investigating the robbery. He testified that the report of a robbery came in at 6:05 in the morning on February 16, 1999, and that within 2½ hours, Schumacher had met with the victim of the robbery to prepare a computerized composite of the suspect. During their meeting, the victim indicated that the male suspect was wearing a white baseball cap with a Nike insignia, a jean jacket, and dark wrap-around sunglasses. In addition, the victim stated that—from what she could see—the suspect was approximately 5 feet 10 inches tall, weighed 180 pounds, and had shorter blond hair. The victim also told Schumacher that the suspect had a light growth of facial hair—a mustache and a goatee. After the composite was completed, Schumacher testified that the victim said that the computer-generated picture closely

represented the suspect. The composite was then distributed to the media.

Another investigator, Tommy Smith, testified that he visited a local company on the day of the robbery. After sharing the victim's description of the robber with the company's head of security and showing her the composite picture, she gave Investigator Smith the name and company identification photograph of an employee—Anthony Smith—fitting the description. Investigator Smith testified that he showed the company identification photograph to the victim that day and that she indicated that the photograph looked like the suspect. Early the next morning, Smith was brought in for questioning in connection with the robbery. Later that morning, around 5:15, Investigator Smith showed the victim a photographic array that included a Polaroid photograph of Smith, taken by Schumacher that morning. The photograph of Smith used in the array was different from the company identification photograph obtained and shown to the victim the day before. As noted by the Court of Appeals in its opinion affirming Smith's conviction on direct appeal, of the six photographs used in the array, Smith is the only individual wearing a white Nike cap backward. In addition, the six individuals depicted do not look significantly similar to one another. See *State v. Smith*, No. A-99-1107, 2000 WL 1285496 (Neb. App. Sept. 12, 2000) (not designated for permanent publication).

Investigator Smith testified that, upon viewing the photographic array, the victim selected the photograph of Smith and said she was 95 percent sure that the person in the photograph was the same person who committed the robbery. Investigator Smith then arranged for the victim to view Smith through a two-way mirror, and the victim again identified Smith as the robber.

The district court overruled Smith's motion to suppress, finding that although the photographic array used by the officers was unduly suggestive, the totality of the circumstances showed no irreparable harm to Smith with respect to the victim's subsequent identification of him. At trial, the victim again identified Smith as the man who committed the robbery.

Smith failed to preserve the issue for appeal when he did not object to testimony at trial regarding the pretrial identification procedures or to the victim's in-court identification of Smith

as the person who committed the robbery. When a motion to suppress is overruled, the defendant must make a specific objection at trial to the offer of the evidence which was the subject of the motion to suppress in order to preserve the issue for review on appeal. *State v. Schwartz,* 239 Neb. 84, 474 N.W.2d 461 (1991).

On appeal, Smith assigned error to the district court's refusal to suppress pretrial identification evidence. The Court of Appeals noted Smith's failure to preserve the issue for review but, nonetheless, addressed the merits of the issue, concluding that even if the pretrial identification procedure was unduly suggestive, the identification was sufficiently reliable to avoid suppression.

An identification procedure is constitutionally invalid only when it is so unnecessarily suggestive and conducive to an irreparably mistaken identification that a defendant is denied due process of law. *State v. Faust, ante* p. 749, 696 N.W.2d 420 (2005). Whether identification procedures were unduly suggestive and conducive to a substantial likelihood of irreparable mistaken identification is to be determined by a consideration of the totality of the circumstances surrounding the procedures. See *id.* The factors to be considered are the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness, and the length of time between the crime and the identification. See *id.*

Pursuant to these directives, the Court of Appeals stated:

If we assume, without deciding, that the trial court was correct in finding the identification procedure used in this case was unduly suggestive, application of the foregoing factors to the facts demonstrates that the identification was sufficiently reliable to avoid suppression. The very proximity of the victim and the perpetrator during the robbery dictates that the victim's opportunity to view the perpetrator was good. The victim testified that there was bright lighting at the time of the robbery, further indicating that she had a good opportunity to view the perpetrator. There is no evidence to indicate the victim's description of the perpetrator varied from Smith's physical characteristics, and when Smith was located by police, he was wearing

clothing substantially matching the description given by the victim. The victim's level of certainty was also high. Finally, the timespan between the crime and the identifications was very short, as all identifications occurred within approximately 24 hours of the robbery. Cloaked with these indicia of reliability, the identification procedure employed in this case was not constitutionally invalid.

See *State v. Smith*, No. A-99-1107, 2000 WL 1285496 at *2 (Neb. App. Sept. 12, 2000) (not designated for permanent publication).

We agree with the Court of Appeals' analysis. The record shows that the victim had a sufficient opportunity to view the suspect; she testified that she stood across from the suspect at the cash register when he commanded her to give him the money. In addition, it is apparent that the victim paid a great degree of attention during the robbery, as she was able to describe the suspect, including his height, weight, hair color, and attire. The victim was able to recall the lighting conditions at the time, as well as the suspect's rapid walk and stern look. Further, Schumacher testified that the day after the robbery, Smith was found in attire that was similar to that described by the victim, including a jean jacket and a white Nike cap. Finally, the victim made the pretrial identification within 24 hours of the crime and testified that upon viewing Smith through the two-way mirror, she was certain that Smith was the perpetrator. Based on this analysis, the identification was not conducive to a substantial likelihood of irreparable harm. Even if Smith's counsel had objected at trial to testimony about the pretrial identification procedures and, thereby, preserved the issue for appeal, it is quite apparent that the Court of Appeals would have found the pretrial identification to be sufficiently reliable to avoid suppression.

The Court of Appeals stated that the victim's in-court identification, also not objected to at trial, was "wholly separate from the alleged unduly suggestive identification" and that even if evidence of the pretrial identifications was erroneously admitted, the result was harmless error. *Smith*, 2000 WL 1285496 at *2. As we stated in *State v. Auger & Uitts*, 200 Neb. 53, 54, 262 N.W.2d 187, 189 (1978):

An in-court identification may properly be received in evidence when it is independent of and untainted by illegal

pretrial identification procedures. . . . A primary factor in determining whether an independent basis for an in-court identification exists is the opportunity afforded the witness to observe the defendant in circumstances free from taint.

(Citation omitted.) Accord *State v. Faust, ante* p. 749, 696 N.W.2d 420 (2005). In this case, the victim had sufficient time to observe the suspect, and she identified him in the courtroom from that recollection of his features. Even if there had been impermissible pretrial suggestions as to the perpetrator's identity, an in-court identification may be received when it is independent of and untainted by impermissible pretrial identification procedures. Thus, no prejudice could be shown to have occurred in any event. See *State v. Hunt*, 212 Neb. 304, 322 N.W.2d 624 (1982).

Therefore, we conclude that Smith was not prejudiced as a result of his trial counsel's failure to object to evidence of the pretrial identification procedures and the victim's in-court identification at trial.

### (b) Defective Information

Smith next argues that his counsel was deficient in failing to object to the information filed against Smith, which failed to specify the victim of the alleged robbery. Smith argues that his counsel should have requested a bill of particulars for additional specificity.

The information charges that "on or about the 16th day of February, 1999, with the intent to steal, [Smith] forcibly and by violence, or by putting in fear, took from the person of another any money or personal property of any value whatever." Smith claims that the charge lacked specificity in failing to indicate the victim of the alleged robbery and, thus, impaired Smith's ability to properly prepare a defense. Smith argues that his counsel was ineffective in failing to object to the information through a motion to quash or request for specificity and, as a result, waived Smith's right to challenge the sufficiency of the information at trial or on direct appeal.

A defect in the manner of charging an offense is waived if, upon being arraigned, the defendant pleads not guilty and proceeds to trial, provided the information or complaint contains no jurisdictional defect and is sufficient to charge an offense under the law. Defects and omissions which pertain to the form of the

complaint or information or to the fact that the information or complaint is inartfully drawn are waived by not objecting at the preliminary stages of the proceeding or, as to some matters, before determination of the issue on the merits. *State v. Laymon*, 239 Neb. 80, 474 N.W.2d 458 (1991).

In this case, Smith argues that the charge for robbery in the information was insufficient because it failed to indicate the victim of the alleged robbery. Any challenge to the sufficiency of the information was waived when Smith's trial counsel failed to challenge the information during the preliminary stages of the proceeding. However, the information was legally sufficient, and therefore, even if Smith's attorney had objected to the information on the ground that it failed to identify the victim, the case against Smith would have proceeded in the same manner.

Pursuant to constitutional considerations of due process and prohibition against double jeopardy, an information must inform an accused, with reasonable certainty, of the charge being made against him or her in order that the accused may prepare his or her defense thereto and also be able to plead the judgment rendered thereon as a bar to a later prosecution for the same offense. See, *State v. Beermann*, 231 Neb. 380, 436 N.W.2d 499 (1989); *State v. Wehrle*, 223 Neb. 928, 395 N.W.2d 142 (1986). An information or complaint is sufficient unless it is so defective that by no construction can it be said to charge the offense of which the accused was convicted. Furthermore, where an information alleges the commission of a crime using language of the statute defining that crime or terms equivalent to such statutory definition, the charge is sufficient. *State v. Bowen*, 244 Neb. 204, 505 N.W.2d 682 (1993).

Neb. Rev. Stat. § 28-324(1) (Reissue 1995) states that "[a] person commits robbery if, with the intent to steal, he forcibly and by violence, or by putting in fear, takes from the person of another any money or personal property of any value whatever." As quoted above, the charge of robbery set forth in the information in this case uses the exact language of the statute, supporting a presumption of sufficiency. In addition, Smith does not assert that he did not understand the nature of the charge against him and offers no explanation as to how he was prevented from preparing an appropriate defense. Moreover, the record shows

that Smith's attorney conducted cross-examinations of the State's witnesses and that Smith testified in his own behalf at trial. We fail to see how Smith's defense would have changed if the robbery charge had identified the victim of the alleged crime.

Furthermore, this court has previously held that the district court, at its discretion, may permit an amendment of the information before the verdict or findings, provided no additional or different offense is charged and the substantial rights of the defendant are not prejudiced. See *State v. Aldrich*, 226 Neb. 645, 413 N.W.2d 639 (1987). Consequently, if an objection to the information had been made in this case, the State could have amended the information to include the identity of the victim if the court found it necessary, and the case would have proceeded to trial.

Thus, we conclude that Smith was not prejudiced as a result of his counsel's failure to challenge the information or request a bill of particulars for specificity and preserve such issues for appeal.

### (c) Improper Questioning at Trial

Finally, Smith argues that his counsel was deficient in failing to object to improper questioning at trial relating to Smith's prior criminal convictions. Smith sets forth the following trial excerpt in support of his argument:

[State:] Mr. Smith, have you ever been convicted of a crime involving dishonesty?

[Smith:] No.

Q Theft?

A No, no.

Q Have you even been convicted of a felony?

A Yes, I have.

Q And that was in 1993?

A Yeah.

Q Is that correct? And that was for domestic abuse?

A That was for domestic violence.

Q In 1987 weren't you also found guilty of felony theft?

A Yes. I stole a car.

Q Okay. So, that would be a theft or a crime involving theft.

A Yes, yes.

Q Okay.

THE COURT: That's not a crime involving dishonesty.

[State:] That is not?

THE COURT: No.

[State:] Okay.

Smith argues that the State's inquiry into his prior convictions was prejudicial and improper under the rules of evidence prohibiting the admission of evidence of convictions greater than 10 years old and of crimes not punishable by death or at least 1 year's imprisonment or involving dishonesty.

This court has held that "[i]n a case tried to a court without a jury, there is a presumption that the trial court, in reaching its decision, considered only evidence that is competent and relevant." *State v. Zaritz*, 235 Neb. 599, 607, 456 N.W.2d 479, 485 (1990). In the absence of evidence to the contrary, the presumption is that a judge will disregard evidence that should not have been admitted. *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000). In this case, Smith was convicted in a bench trial. Thus, even if the State improperly questioned Smith about his prior convictions, the district court is presumed to have considered only properly admissible evidence in reaching its decision. In fact, at trial, the court stated that the prior theft conviction about which the State inquired did not involve dishonesty, demonstrating that the court was familiar with the pertinent evidentiary rules and their applicability to the testimony set forth above. Such a statement by the court supports an even stronger presumption that the court disregarded the inadmissible evidence in making its decision. Thus, we conclude that Smith was not prejudiced by his counsel's failure to object to improper questioning by the State at trial because the district court is presumed to have considered only legally admissible evidence in deciding the case.

## VI. CONCLUSION

For each of the above reasons, we find no infringement of Smith's constitutional rights such as to make the underlying criminal judgment void or voidable and, accordingly, affirm the decision of the district court denying Smith's motion for post-conviction relief.

AFFIRMED.