Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/19/2019 08:05 AM CDT

State of Nebraska, appellee, v.
Timothy L. Fuentes, appellant.
___ N.W.2d ___

Filed April 19, 2019.    No. S-18-122.

1. **Postconviction: Evidence: Appeal and Error.** In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. An appellate court upholds the trial court's factual findings unless they are clearly erroneous.

2. **Effectiveness of Counsel.** A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact.

3. **Effectiveness of Counsel: Appeal and Error.** When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's conclusion.

4. **Constitutional Law: Due Process: Trial: Judges.** The right to an impartial judge is guaranteed under the Due Process Clauses of the U.S. and Nebraska Constitutions, the parameters of which are coextensive.

5. **Constitutional Law: Trial: Judges: Proof.** In order to show a constitutional violation of the right to an impartial judge, a defendant must prove actual bias or structural error.

6. **Trial: Judges: Words and Phrases.** Structural error occurs when the defendant shows that a judge has such a strong personal or financial interest in the outcome of the trial that he or she was unable to hold the proper balance between the State and the accused.

7. **Postconviction: Trial: Presumptions: Appeal and Error.** Although structural error requires automatic dismissal if brought on direct appeal,

not all structural error will result in a presumption of prejudice when raised in a motion for postconviction relief.

8. **Judges: Recusal.** Instances in which the judge's impartiality might reasonably be questioned specifically include where the judge has a personal bias or prejudice concerning a party or a party's lawyer.

9. **Judges: Recusal: Presumptions.** A defendant seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality.

10. **Constitutional Law: Identification Procedures: Due Process.** An identification procedure is constitutionally invalid only when it is so unnecessarily suggestive and conducive to an irreparably mistaken identification that a defendant is denied due process of law.

11. **Identification Procedures.** Whether identification procedures were unduly suggestive and conducive to a substantial likelihood of irreparable mistaken identification is to be determined by a consideration of the totality of the circumstances surrounding the procedures.

12. ____. The factors to be considered in determining whether identification procedures were unduly suggestive and conducive to a substantial likelihood of irreparable mistaken identification are the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness, and the length of time between the crime and the identification.

Appeal from the District Court for Scotts Bluff County: Andrea D. Miller, Judge. Affirmed.

Leonard G. Tabor for appellant.

Douglas J. Peterson, Attorney General, Erin E. Tangeman, Derek Bral, Senior Certified Law Student, and, on brief, Sarah E. Marfisi for appellant.

Heavican, C.J., Cassel, Stacy, Funke, and Papik, JJ.

Heavican, C.J.

INTRODUCTION

Timothy L. Fuentes was convicted of third degree sexual assault of a child, second offense, and sentenced to 50 to 50 years' imprisonment. His conviction and sentence were

affirmed on direct appeal. Fuentes filed a motion seeking postconviction relief. Following an evidentiary hearing, the district court denied Fuentes' motion. He appeals. We affirm.

## FACTUAL BACKGROUND

The facts leading to Fuentes' conviction show that on August 21, 2012, Fuentes visited the upstairs apartment of a converted house. The victim, Analicia B., was outside of the house at the time of Fuentes' visit. Analicia's family lived in the basement apartment of the same house. Analicia testified that Fuentes arrived at the home while her stepfather, Gabriel T., had been outside. Analicia further testified that Fuentes went into the upstairs apartment and that Gabriel went into the basement apartment, leaving Analicia and her sister outside. Fuentes left the upstairs apartment approximately 5 minutes later, while Gabriel was still in the basement apartment. Analicia testified that as he left, Fuentes "slid his finger" of his right hand up and then sideways on Analicia's genital area over her clothing.

Analicia immediately reported the touching to her parents, and law enforcement was contacted. A few days later, Analicia identified Fuentes out of a photographic array (photo array) that included photographs of Fuentes and five other individuals.

Fuentes was charged with third degree sexual assault of a child. A first jury trial ended in a mistrial because of a deadlocked jury; Fuentes was convicted following the second trial. His conviction and sentence were affirmed on direct appeal in a memorandum opinion filed by the Nebraska Court of Appeals on February 26, 2014, in case No. A-13-340.

Fuentes subsequently filed a pro se motion seeking postconviction relief. Fuentes was represented by an attorney from the Scotts Bluff County public defender's office at trial and on direct appeal, and he is represented by appointed counsel in this appeal. Fuentes asserts that trial counsel was ineffective

at trial and on appeal by failing to (1) argue ineffective assistance of counsel on direct appeal; (2) file a motion to suppress statements; (3) file a motion to recuse the trial judge; (4) file a motion in limine; (5) file a motion to suppress the photo array; (6) investigate and depose Analicia, an unknown adult, and Gabriel; (7) object to jury instructions Nos. 1 and 5; (8) object to exhibit 5; (9) object to the testimony of DelMaria B., Analicia's mother; and (10) file a motion to dismiss at the conclusion of the State's evidence.

Because the trial judge had retired, a new district court judge was appointed. Following an evidentiary hearing, the district court denied Fuentes' motion for postconviction relief. Fuentes appeals.

## ASSIGNMENT OF ERROR

Fuentes assigns that the district court erred in denying his motion for postconviction relief.

## STANDARD OF REVIEW

[1] In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. An appellate court upholds the trial court's factual findings unless they are clearly erroneous.[1]

[2,3] A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact.[2] When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*,[3] an appellate court

---

[1] *State v. Huston*, 302 Neb. 202, 922 N.W.2d 723 (2019).

[2] *Id.*

[3] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

reviews such legal determinations independently of the lower court's conclusion.[4]

## ANALYSIS

Fuentes contends on appeal that the district court erred in denying his motion for postconviction relief and asserts various grounds in support of his assignment of error. Fuentes argues that counsel was ineffective in failing to (1) file a motion to suppress the photo array and out-of-court identification of Fuentes, (2) investigate and depose a clerk at the liquor store next door to the victim's residence at the time of the alleged sexual assault, (3) investigate and depose an acquaintance of Fuentes who was at the liquor store the day of the incident, (4) investigate and depose a coworker of Fuentes, (5) investigate and depose the unknown male witness at the time of the sexual assault, (6) raise an intoxication defense, (7) seek the recusal of the district court judge, (8) have Fuentes take a polygraph examination, (9) engage in plea negotiations or communicate plea offers from the State to Fuentes, and (10) adequately explore inaccuracies in the testimony of several witnesses.

Several of these assignments of error can be rejected because they were not raised in Fuentes' motion. The motion does not raise an ineffectiveness claim with respect to three witnesses—the liquor store clerk, Fuentes' acquaintance, or his coworker. Nor does that motion assert ineffectiveness with regard to the failure to raise the intoxication defense, seek a polygraph examination, engage in plea negotiations, or communicate plea deals. As such, we turn to the arguments both raised in Fuentes' motion and preserved on appeal.

### Failure to Seek Recusal of District Court Judge.

Fuentes contends that the trial judge should have recused himself, because the judge assigned to his case had previously

---

[4] *Huston, supra* note 1.

represented him on a criminal matter in 1995. Fuentes further contends that trial counsel was ineffective for not seeking such recusal.

[4-7] The right to an impartial judge is guaranteed under the Due Process Clauses of the U.S. and Nebraska Constitutions, the parameters of which are coextensive.[5] In order to show a constitutional violation of the right to an impartial judge, a defendant must prove actual bias or structural error.[6] Structural error occurs when the defendant shows that a judge has such a strong personal or financial interest in the outcome of the trial that he or she was unable to hold the proper balance between the State and the accused.[7] Although structural error requires automatic dismissal if brought on direct appeal, not all structural error will result in a presumption of prejudice when raised in a motion for postconviction relief.[8]

[8,9] In addition to the constitutional right to an impartial judge, the Nebraska Revised Code of Judicial Conduct states that a judge must recuse himself or herself from a case if the judge's impartiality might reasonably be questioned.[9] Under the code, such instances in which the judge's impartiality might reasonably be questioned specifically include where "'"[t]he judge has a personal bias or prejudice concerning a party or a party's lawyer . . . ."'"[10] However, a defendant seeking to disqualify a judge on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of judicial impartiality.[11]

---

[5] *State v. Thomas*, 268 Neb. 570, 685 N.W.2d 69 (2004).

[6] *Id.*

[7] *Id.*

[8] See *Weaver v. Massachusetts*, ___ U.S. ___, 137 S. Ct. 1899, 198 L. Ed. 2d 420 (2017).

[9] *State v. Buttercase*, 296 Neb. 304, 893 N.W.2d 430 (2017).

[10] *Id*. at 314, 893 N.W.2d at 438.

[11] *Buttercase, supra* note 9.

Fuentes essentially acknowledges that this case does not include structural error. Nor does Fuentes argue that his trial judge was aware of confidential information that was harmful to Fuetnes' case. Rather, Fuentes now argues that the trial judge should have recused himself due to the appearance of impropriety. But, as we noted in *State v. Buttercase*,[12] a defendant has a heavy burden to overcome the presumption of judicial impartiality and show that the judge has a personal bias or prejudice concerning the defendant.

In *Buttercase*, the defendant sought to force the removal of a judge who had presided over prior criminal charges filed against him. We rejected the claim, noting that "the fact that the court previously presided over other actions involving the parties and made rulings against one or another of the parties" was insufficient to show bias.[13] We observed that the fact that a judge knows most of the attorneys practicing in his or her district is common, and the fact that a judge knows attorneys through professional practices and organizations does not, by itself, create the appearance of impropriety. We further observed that judicial rulings alone almost never constitute a valid basis for a bias or partiality motion directed to a trial judge.

While *Buttercase* dealt with a judge who had previously overseen charges against a defendant, we are presented here with a judge who, 17 years earlier, apparently represented the defendant in a criminal proceeding. The two cases are, of course, factually distinct, but both touch on whether prior knowledge of a defendant creates an appearance of bias.

Fuentes has not offered any evidence whatsoever to show that the trial judge had access to confidential information or even recalled representing Fuentes; that the trial judge used confidential, personal information in presiding over Fuentes'

---

[12] *Id.*

[13] *Id*. at 316, 893 N.W.2d at 439.

trial or in sentencing him; or, indeed, that the trial judge was biased or prejudiced against Fuentes in any way. We also observe that while Fuentes suggested in his deposition that an oral motion seeking the trial judge's recusal was made, there is no record of such an oral motion, let alone a written motion. Fuentes has failed to meet his burden to show that he was prejudiced by the failure of the trial court judge to recuse himself. There is no merit to this argument on appeal.

*Failure to File Motion to*
*Suppress Photo Array*
*and Out-of-Court*
*Identification.*

Fuentes argues that counsel was ineffective in failing to file a motion to suppress the photo array and in failing to object to all testimony regarding out-of-court identification by Analicia. The basis of his argument appears to be his assertion that Analicia was not given an advisement in advance of identifying him from a photo array and that DelMaria's presence impacted Analicia's identification.

[10-12] An identification procedure is constitutionally invalid only when it is so unnecessarily suggestive and conducive to an irreparably mistaken identification that a defendant is denied due process of law.[14] Whether identification procedures were unduly suggestive and conducive to a substantial likelihood of irreparable mistaken identification is to be determined by a consideration of the totality of the circumstances surrounding the procedures.[15] The factors to be considered are the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness, and the length

---

[14] *State v. Smith*, 269 Neb. 773, 696 N.W.2d 871 (2005).

[15] *Id.*

of time between the crime and the identification.[16] We have noted that "an array of five photographs is sufficient to constitute a fair and adequate array when attempting to identify a single perpetrator."[17]

The record contains very little information about the photo array. The photo array itself is not in the record. There is no dispute that a motion to suppress any identification arising from the photo array was not filed, and counsel did not otherwise object to evidence offered on the photo array and Analicia's identification of Fuentes.

The officer who prepared the photo array and showed it to Analicia testified during trial that he was also the officer who first reported to the scene of the alleged assault. He further testified that at the time he met with Gabriel and DelMaria, he did not interview Analicia, because it was policy for child sexual assault victims to be interviewed by individuals trained in appropriate interview techniques.

The officer further testified that at the time he spoke with Gabriel and DelMaria, the couple identified Fuentes as the individual who had been outside their apartment at the time of the alleged assault, because Gabriel had been outside and had seen Fuentes arrive. The officer also testified that Fuentes was not at the scene when he arrived, but that the officer effected a traffic stop of Fuentes a few days later, on August 24, 2012.

The officer additionally testified that he prepared a photo array of photographs of six individuals—Fuentes and five others—and showed it to Analicia, in the presence of DelMaria, on August 26, 2012, at the Scottsbluff Police Department. According to this testimony, DelMaria sat next to Analicia but did not say anything during the process.

---

[16] *Id.*

[17] *State v. Swoopes*, 223 Neb. 914, 918, 395 N.W.2d 500, 504 (1986), *overruled on other grounds, State v. Jackson*, 225 Neb. 843, 408 N.W.2d 720 (1987).

Analicia testified that the officer showed her the photo array and that she circled the picture of the man who touched her. Analicia also testified at trial that the man who touched her was in the courtroom at the time she was testifying, identifying Fuentes as that person.

Fuentes does not make any particular argument about the makeup of the photo array. Rather, he concentrates his argument on the fact that Analicia did not receive an advisement prior to viewing the photo array and on the fact that DelMaria was present during the showing of the photo array.

There are several problems with Fuentes' contentions on appeal. First, there is no evidence regarding whether Analicia received an advisement prior to looking at the photo array presented to her. Fuentes' trial counsel had passed away prior to the filing of the postconviction motion, but an attorney from the public defender's office testified by deposition about Fuentes' case file. There was no questioning about an advisement during that deposition. The office's file was not offered as an exhibit to the deposition, nor is the police file part of the record before this court. It is not possible to know whether an advisement was actually given, because no one asked that question or offered evidence that might answer that question. Moreover, Fuentes cites to no authority requiring such an advisement; rather, he cites to a memorandum opinion of the Court of Appeals where such an advisement was given.[18]

In addition, a review of the entire record suggests that Fuentes was identified largely because Gabriel was aware that Fuentes had been on the scene at the relevant time and identified Fuentes by name to the investigating officer. The officer had contact with Fuentes for the first time 2 days *prior* to showing Analicia the photo array. In addition, another officer testified that he had contact with Fuentes at the police

---

[18] *State v. Fletcher*, No. A-08-723, 2009 WL 2767720 (Neb. App. Sept. 1, 2009) (selected for posting to court website).

department on either August 23 or 24, 2012, because Fuentes had heard officers were looking for him.

Finally, the issue in this case was not who touched Analicia; the issue was whether Analicia was touched. Fuentes does not deny being at the scene at the relevant time. He denied only that he touched Analicia.

Fuentes has not met his burden to show that he was prejudiced by any failure of counsel to suppress the photo array when law enforcement was aware from the time of the alleged incident that it was looking for Fuentes. There is no merit to his argument.

*Failure to Adequately Explore*
*Inconsistencies in Witness*
*Testimonies.*

Somewhat related to Fuentes' allegations regarding the failure to investigate other witnesses is Fuentes' contention that his counsel was ineffective in failing to adequately cross-examine certain witnesses regarding inconsistencies in their statements at trial.

In his motion, Fuentes alleges inconsistencies of several witnesses, but argues on appeal only that Analicia's testimony was inconsistent. Specifically, Fuentes' brief argues that Fuentes testified at his hearing that Analicia's testimony regarding her identification of Fuentes was inconsistent.

Fuentes' argument is without merit. Fuentes does not explain how he believes Analicia's testimony was inconsistent and does not provide any other evidence to suggest actual inconsistencies in her testimony.

Moreover, our review of Analicia's testimony reveals no inconsistencies of note. Analicia testified that Fuentes walked past her into the residence to visit the people who lived on the main floor of the apartment building and that about 5 minutes later, the same man left the building, touching her, as described above, on his way out. There is no real dispute that Fuentes was the man who entered and exited the home; the only dispute

is whether he touched Analicia as he left—she testified that he did, while Fuentes testified that he did not.

Fuentes did not meet his burden to show that his counsel was ineffective in failing to point out inconsistencies in Analicia's testimony, because it is not at all clear to what inconsistency Fuentes was referring and, in any case, a review of Analicia's testimony reveals no inconsistency. This assignment of error is without merit.

## CONCLUSION

The decision of the district court dismissing Fuentes' motion for postconviction relief is affirmed.

AFFIRMED.

MILLER-LERMAN and FREUDENBERG, JJ., not participating.