IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. CROWL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

GAVIN R. CROWL, APPELLANT.

Filed June 25, 2019.    No. A-18-643.

Appeal from the District Court for Lancaster County: ROBERT R. OTTE, Judge. Affirmed.

Candice C. Wooster, of Brennan & Nielsen Law Offices, P.C., for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Gavin R. Crowl appeals from the order of the district court for Lancaster County, which denied his motion for postconviction relief without an evidentiary hearing. He alleges various claims of ineffective assistance of trial counsel. Finding that the court did not err by denying Crowl's postconviction claims without an evidentiary hearing, we affirm.

## BACKGROUND

In 2015, Crowl was convicted of third degree sexual assault of a child and sentenced to 3 years' probation. The victim, J.R., and her mother, L.R., both testified at trial. On direct appeal, Crowl asserted that the district court erred in overruling his objections to certain evidence and finding there was sufficient evidence to sustain a guilty verdict. This court affirmed Crowl's conviction and sentence in a memorandum opinion filed July 26, 2016. See *State v. Crowl*, No. A-15-1003, 2016 WL 4045385 (Neb. App. July 26, 2016) (selected for posting to court website).

- 1 -

Crowl's petition for further review was denied by the Nebraska Supreme Court on September 1, 2016.

On May 12, 2017, Crowl filed a motion for postconviction relief, alleging that his trial counsel was ineffective for (1) failing to investigate and interview witnesses relating to a "church investigation," (2) failing to narrow the scope of the offense dates alleged in the information, (3) failing to prepare Crowl to testify, (4) failing to question L.R. at trial regarding statements or assertions she made to others in the "church investigation," (5) failing to object to some of the L.R.'s testimony on foundational grounds, (6) failing to cross-examine J.R. about a traumatic brain injury she had suffered, and (7) having a conflict of interest (based on Crowl's belief that his counsel's wife had some affiliation with the Child Advocacy Center where L.R. was interviewed as part of the police investigation in this case).

On July 26, 2017, the State filed a response and motion, seeking to dismiss Crowl's postconviction motion without an evidentiary hearing. Subsequently, Crowl, joined by the State, filed a motion to unseal the records of the testimony given by James Newman at a hearing held in May 2015 on a motion to quash a subpoena. The court granted the motion to unseal the records for the limited purpose of having them transcribed and submitted to the parties' counsel for review according to the terms of a protective order entered by the court.

On May 14, 2018, a hearing was held on Crowl's motion for postconviction relief and the State's motion to deny an evidentiary hearing. At this hearing, the State offered and the district court received into evidence a copy of the transcribed testimony from the unsealed May 2015 hearing, as well as a certified copy of the "JUSTICE Register of Actions" and "Judge's Notes" for the case. The testimony from the May 2015 hearing shows that Newman was an elder in a church attended by Crowl, L.R., and J.R., and who spoke with Crowl about certain allegations at some point prior to the police investigation in this case. We discuss his testimony further as necessary in the analysis section below.

On May 21, 2018, Crowl filed an amended motion for postconviction relief. He stated that he was incorporating by reference all the facts, statements, and denials and infringements of his constitutional rights identified in his original postconviction motion. Additionally, he alleged that his trial counsel was ineffective for failing to call Newman as a witness at trial. Specifically, Crowl stated that the church investigation would have shown that the church members involved decided not to call the police or impose any sort of church discipline against Crowl. He also alleged that the information obtained during the church investigation, conducted in 2013, was exculpatory evidence that should have been investigated further by Crowl's attorney and presented at trial. Crowl alleged that had his attorney followed up by taking Newman's deposition, obtaining church investigation reports, and presenting such evidence at trial, the trial would have ended in his favor with a not guilty verdict.

On June 4, 2018, the district court entered an order, denying Crowl's motion for postconviction relief and his request for an evidentiary hearing. The court determined that Crowl had failed to establish that he was prejudiced by his trial counsel's allegedly deficient performance. The court found that Crowl's "admissions relative to his actions with [L.R.] work against any suggestion that evidence from a church investigation might have had effect." The court determined that the claim "of ineffectiveness for failing to further pursue the church investigation" was

speculative, and it found nothing to suggest that additional evidence as to the church investigation would have been exculpatory. Finally, the court stated that "it appears that certain statements that might have been made would have been privileged and therefore not proper for disclosure much less available to the jury." The court did not specifically address the allegations raised in Crowl's original motion and incorporated into his amended motion, but it stated, "Overall, the court does not find the performance [of Crowl's trial counsel] deficient." Accordingly, the court found that he was not entitled to an evidentiary hearing or postconviction relief.

Crowl subsequently perfected the present appeal to this court.

## ASSIGNMENTS OF ERROR

Crowl asserts that the district court erred in denying his motion for postconviction relief without an evidentiary hearing and finding that he was not prejudiced by his trial counsel's deficient performance in (1) failing to further investigate and present evidence of the church investigation and (2) cross-examining L.R. and J.R.

## STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Martinez*, 302 Neb. 526, 924 N.W.2d 295 (2019). Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law which is reviewed independently of the lower court's ruling. *State v. Tyler*, 301 Neb. 365, 918 N.W.2d 306 (2018).

A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. *State v. Fuentes*, 302 Neb. 919, 926 N.W.2d 63 (2019). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id.* With regard to questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's conclusion. *State v. Fuentes, supra*.

## ANALYSIS

*Applicable Legal Principles.*

Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable. *State v. Martinez, supra*. In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *State v. Martinez, supra*. On appeal from the denial of postconviction relief without an evidentiary hearing, the question is not whether the movant was entitled to relief by having made the requisite showing. *State v. Henderson*, 301 Neb. 633, 920 N.W.2d 246 (2018). Instead, it must be determined whether the allegations were sufficient to grant an evidentiary hearing. *Id.*

The allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified. *Id.* A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution. *State v. Martinez, supra.* If a postconviction motion alleges only conclusions of fact or law, or if the records and files in the case affirmatively show that the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing. *Id.*

Because Crowl was represented by the same counsel at trial and on direct appeal, this is his first opportunity to raise issues of ineffective assistance of trial counsel. Although a motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, when a defendant was represented both at trial and on direct appeal by the same lawyer, the defendant's first opportunity to assert ineffective assistance of counsel is in a motion for postconviction relief. *State v. Allen*, 301 Neb. 560, 919 N.W.2d 500 (2018).

A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial. *State v. Stricklin*, 300 Neb. 794, 916 N.W.2d 413 (2018). In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden first to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *State v. Henderson, supra.* Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *Id.* To establish the prejudice prong of a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id.* A court may address the two prongs of this test, deficient performance and prejudice, in either order. *Id.*

Guided by the above principles, we address Crowl's assignments of error in this postconviction appeal.

*Evidence of Church Investigation.*

Crowl asserts that the district court erred in finding that he was not prejudiced by his trial counsel's deficient performance in failing to further investigate and present evidence of the church investigation.

Although an evidentiary hearing was not held on Crowl's motion for postconviction relief, the district court did receive the bill of exceptions from a pretrial hearing in this case. Prior to trial, Crowl's counsel subpoenaed Newman for a deposition, but Newman filed a motion to quash, which was heard by the district court on May 19, 2015. At the hearing, Newman agreed that he was aware of allegations that Crowl had sexually abused someone, and testified that he and another church elder talked to Crowl about the allegations, "just to see how [they] could help him." Newman indicated that there is a process in the congregation by which someone can become "disfellowshipped," which means that they can still attend but other congregants "just don't

associate with them on a personal level." Individuals will be disfellowshipped for violating "scriptural law" or "scriptural principles." According to Newman, in the event of allegations that might lead to someone being disfellowshipped, "You'll look at the matter and see how you can help the person spiritually." After stating that an investigation of such matters would involve talking to the accused individual, he elaborated, stating, "We're not police. We don't delve into people's personal lives beyond what is normal. We don't track people down or investigate them in that matter. The whole matter is to help an individual to have a clean spiritual -- clean conscience." He indicated that even if they had found the allegations about Crowl to be true, Crowl would not necessarily have been disfellowshipped.

Newman testified that he spoke with J.R. about the allegations concerning Crowl and told her he would "look into" them, after which he and another elder had a conversation with Crowl "to see . . . how [he] was doing, if the accusation was true, and what [they could] do to help him spiritually." During questioning by Crowl's counsel, Newman confirmed the name of the other elder. Newman stressed that when he and the other elder spoke to Crowl about the allegations, they "were not serving in the capacity of investigators but serving in the capacity as ministers." According to Newman, they never spoke with L.R., and the conversations they had with Crowl and "the accusing party" were both for "spiritual reasons."

Newman testified that because Crowl admitted part of the allegation, they found the allegation to be partly true. When questioned further about Crowl's admission, Newman stated, "Well the information that was given to me was confidential," but he agreed that the admission did not "rise to the level that [he] thought there was sexual abuse and [he] needed to contact law enforcement." Newman again indicated that he talked to J.R., Crowl, and a person who had "third-hand knowledge" about the allegations and that the conversations with J.R. and Crowl were for the purpose of giving spiritual advice. He estimated that these conversations took place sometime in 2013.

Newman continued to maintain that the specific allegations against Crowl were confidential, but after further questioning, he eventually revealed that the allegations were that Crowl had kissed L.R. and put his hand on her chest. According to Newman, Crowl admitted that he kissed L.R. but denied touching her chest. Newman did not recall "the manner in which the questions were asked" that elicited Crowl's admission, and he testified that the entire conversation with Crowl lasted about 30 minutes. In addition to speaking to the reporting individual, who was J.R.'s cousin, J.R., and Crowl, Newman also spoke to other elders of the church about the allegations. He indicated that none of these conversations were recorded, that no written records were made to preserve the conversations, and that there were no consequences to any of the individuals involved following the conversations, i.e., no one was disfellowshipped. Newman indicated that there would have been a meeting with the elders regarding the allegations. He did not know if any minutes were taken of that meeting and indicated that minutes are not always taken at meetings where elders are present. According to Newman, the purpose of the meeting with the elders was to "see if anybody else had heard of the accusation and to see how [they] could help [Crowl] as well as [J.R.] and [L.R.]."

At the conclusion of Newman's testimony, Crowl's attorney informed the district court that he did not intend to take Newman's deposition based on the information he had acquired

during the hearing, but he stated, "I may need to subpoena him for trial." In opposing the motion to quash, Crowl's attorney informed the court that he had been seeking information about Newman's participation in the investigation, but he again indicated that he did not intend to take Newman's deposition "at this point." He stated further, "However, I suppose . . . if there was further development, perhaps I would need to." The district court granted Newman's motion to quash in part and in part denied it. The court stated:

> I think there is a line between counseling and investigation. I don't think we've gone over that line. To the extent that the motion to quash seeks to quash the counseling information, the personal spiritual development or counseling, that motion is sustained or that part of the motion is sustained. To the extent that the motion reaches further, maybe into the investigation and some of the processes that went on, the motion is overruled.

The court sealed the record of the hearing, and, as indicated above, it was unsealed during the course of the postconviction proceedings.

On appeal, Crowl argues that the information obtained during the church investigation constituted exculpatory evidence and that because it was conducted prior to the police investigation, it "began closer to the date the alleged crime occurred." Brief for appellant at 12. He argues that evidence that "another agency conducted an investigation and decided against calling the police is strong evidence supporting [his] innocence" and that this evidence should have been presented to the jury. Brief for appellant at 13. Newman argues that an attorney with reasonable training and experience would have further investigated this "obviously exculpatory evidence" by taking Newman's deposition, subpoenaing all available church records and reports regarding the investigation, and obtaining all available impeachment evidence to discredit the testimony given by L.R. and J.R. at trial. Brief for appellant at 12. He argues that had his attorney used such evidence at trial, the trial would have ended in an acquittal. We disagree.

We find that Crowl has not sufficiently alleged how further investigation on the part of his trial counsel would have made a difference in his defense. Crowl has not described what would have been discovered during any additional investigation or explained how testimony from Newman or any other church elder would have made a difference to the result. Without such allegations, he has failed to allege facts that would entitle him to an evidentiary hearing. See *State v. Martinez*, 302 Neb. 526, 924 N.W.2d 295 (2019).In his initial postconviction motion, Crowl alleged that his trial counsel failed to depose or question Newman at trial as to what L.R. and/or J.R. asserted and whether it was materially consistent or inconsistent with their trial testimony. He asserted his belief that Newman could offer testimony that had exculpatory value and included information relating to the credibility of L.R.'s and J.R.'s allegations and testimony. A review of Newman's testimony from the sealed hearing, however, shows that he and the other church elder never spoke with L.R, and thus, it would be impossible to discredit L.R. based upon Newman's testimony. At trial, L.R. testified about feeling uncomfortable when Crowl gave her a kiss and a massage and indicated that he rubbed her nipples during the massage. Crowl testified about giving L.R. a massage, but he denied ever touching L.R.'s breasts. Newman revealed that Crowl admitted to having kissed L.R. but that he denied touching her chest. Newman's testimony that Crowl denied touching L.R.'s chest is consistent and would have been cumulative. Further, Crowl does not

explain what additional information would have been elicited from a deposition of Newman. Although he alleges in his amended postconviction motion that his attorney also failed to subpoena from Newman documents and records made by the church regarding the investigation, Newman's testimony does not show that any such documents were made.

Crowl relies on *State v. Stricklin*, 300 Neb. 794, 916 N.W.2d 413 (2018), where the Nebraska Supreme Court found that the defendant was entitled to an evidentiary hearing on his claim that his trial counsel was ineffective in failing to investigate and present evidence of two other potential suspects. That case is distinguishable from the situation here, which does not involve an argument that the crime was committed by someone else. Further, Crowl's attorney did investigate the church matter and determined, based upon Newman's testimony at the hearing on the motion to quash, that further deposing Newman was not necessary. Although Crowl argues on appeal that the elders conducting the investigation "made the decision," based on the information uncovered during the investigation, not to call the police, Newman did not testify as to any such formal decision. Brief for appellant at 12. He only confirmed that he did not contact police himself, that the information given to him did not rise to the level that he felt there was reportable, sexual abuse, and that police were not contacted by any of the other elders "to [his] knowledge." Newman did agree that the congregation's policy was to report sexual abuse. Newman emphasized that the conversations he had with Crowl, J.R., and the other elder were simply for the purpose of spiritual counseling and were not considered an investigation or a police matter. Likewise, he indicated that the meeting with additional elders regarding the allegation was to see if anyone else had heard of the accusation and to see how they could help Crowl, J.R., and L.R. Newman repeatedly emphasized the confidential nature of these communications. As noted by the district court, these conversations were likely privileged and not admissible evidence. See Neb. Rev. Stat. § 27-506 (Reissue 2016) (concerning confidential communications to clergy and who may claim privilege with respect to such communications). Trial counsel made a strategic decision, and we agree with the district court that counsel's performance was not deficient.

In addition, Crowl has not shown how he was prejudiced by his attorney's failure to investigate further and present evidence of the church investigation at trial. Although he argues that the result of the church investigation amounted to exculpatory evidence, we disagree. The church investigation was aimed at helping those involved on a spiritual level, and Newman and the other elder never spoke to L.R. Given that Crowl admitted during the church investigation to kissing L.R., such evidence does not lend itself to a conclusion that had such information been presented at trial, the outcome would have been different. The district court did not err in denying an evidentiary hearing and postconviction relief on this issue.

*Cross-Examination of L.R. and J.R.*

Crowl asserts that the district court erred in finding that he was not prejudiced by his trial counsel's deficient performance in cross-examining L.R. and J.R. He argues that his counsel was ineffective for failing to cross-examine both L.R. and J.R. about statements made during the church investigation and failing to cross-examine J.R. about her traumatic brain injury.

In his initial postconviction motion, Crowl alleged that his trial counsel failed to question L.R. about statements or assertions she made to others in the church investigation and whether

these statements or assertions were consistent with her trial testimony. He alleged further that any inconsistency in her claims or assertions would have cast doubt on her statements and likely would have resulted in an acquittal. A review of the record from the sealed hearing in 2015, shows that Newman clearly testified that he never spoke to L.R. during the course of the church investigation. Accordingly, the record refutes a suggestion that that there was anything to ask L.R. about what statements she made during the church investigation. The record from the sealed hearing also shows that the church investigated allegations that Crowl had kissed L.R. and touched her chest. Although Crowl's counsel did not question L.R. at trial about the church investigation, he did cross-examine her extensively about the massage and her subsequent report to her mother that Crowl had touched her breasts. Crowl has not shown that how questioning L.R. about the church investigation would have changed the outcome of the trial. Crowl also argues that his trial counsel failed to question L.R. about any statements she made to J.R., but a review of her trial testimony shows that Crowl's attorney did question her on this topic. Crowl has not shown that he was prejudiced or that his trial counsel performed deficiently in this regard.

Next, Crowl argues that his trial counsel did not cross-examine J.R. about her conversation with Newman or any of the other church elders. In his initial postconviction motion, Crowl alleged that he was prejudiced by his trial counsel's failure in this regard because any inconsistency with J.R.'s claims or assertions would have cast doubt on her statements and likely would have resulted in an acquittal. As revealed by the record of the sealed hearing, Newman told J.R. that he would look into the allegations made by the reporting party (someone other than J.R. or L.R.), after which he and the other elder spoke to Crowl to counsel him spiritually. Given the focus of the church investigation on helping those involved spiritually, cross-examination of J.R. as to any other conversation she may have had with Newman would likely have been privileged and not relevant to the issues at trial. As with L.R., Crowl's attorney cross-examined J.R. with respect to the massage, her discussion of it with Crowl, and L.R.'s report to J.R. about the massage. Again, Crowl has not shown prejudice or deficient performance.

With respect to cross-examination of J.R. about her traumatic brain injury, Crowl asserted in his initial postconviction motion that his trial counsel did not cross-examine her about this brain injury and the effect that it had on her ability to recall events and accurately describe them. On direct examination at trial, J.R. testified that she suffered a car accident in 2001, prior to L.R.'s birth, which caused her to have a traumatic brain injury. The jury was presented with evidence that J.R. had suffered a traumatic brain injury, and it was able to judge her credibility in light of that evidence. As noted above, Crowl's attorney cross-examined J.R. on the issues relevant at trial, and he does not explain how questioning her further about something that occurred a decade prior to the events in question would have led to relevant, admissible evidence likely to change the outcome of the trial. Crowl has not shown that his trial counsel performed deficiently or that he was prejudiced in this regard.

The district court did not err in denying an evidentiary hearing and postconviction relief on the issue of his trial counsel's cross-examination of J.R. and L.R.

CONCLUSION

For the foregoing reasons, we affirm the order of the district court denying Crowl's motion for postconviction relief without an evidentiary hearing.

AFFIRMED.